UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Eugene A. Barriault,
    Claimant

    v.                                   Civil No. 07-cv-176-SM
                                         Opinion No. 2008 DNH 075
Michael J. Astrue, Commissioner,
Social Security Administration,
    Defendant


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Eugene A. Barriault moves to reverse the Commissioner's decision denying his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act").  The Commissioner objects and moves for an order affirming his decision.  For the reasons set forth below, the Commissioner's motion is denied and the claimant's motion is granted to the extent it seeks a remand to the Administrative Law Judge for further proceedings.


**Factual Background**

I.   Procedural History.

The procedural history to this case is both lengthy and complex and has involved several hearings before various ALJ's and at least one favorable opinion from the Appeals Council

(granting claimant's application for Supplemental Security Income benefits).  It is described in some detail in the parties's Joint Statement of Material Facts (document no. 10) and, because it is not entirely relevant to the issues presently before the court, need not be rehearsed in detail.  It is sufficient to note the following.  First, it has already been resolved that claimant was <u>not</u> disabled at any time prior to April 17, 1998 (hence, his current application seeking benefits as of April 18, 1998).  Additionally, it has already been resolved that he <u>was</u> disabled as of July 1, 2002, based upon a consultative examiner's conclusion that he met the requirements of Listing 4.04C(1)(e) since July 30, 2000, and was, therefore, "presumptively disabled" as of that date.  Administrative Record ("Admin. Rec.") at 144.

The issue currently before the court is whether the ALJ erred in concluding that claimant was not disabled during a relatively brief period of eleven and one-half months, between April 18, 1998, and March 31, 1999 (his date last insured).  The ALJ concluded that, although claimant suffers from impairments that are "severe," he was not disabled at any time prior to his date last insured.  Claimant then sought review of that decision by the Appeals Council.  On April 13, 2007, however, the Appeals Council denied his request, thereby rendering the ALJ's decision

a final decision of the Commissioner, subject to judicial review. Subsequently, in June of 2007, claimant filed an action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that he is disabled within the meaning of the Act.  Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 8).  The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 9).  Those motions are pending.

II.  <u>Stipulated Facts</u>.

As noted above, the parties have, pursuant to this court's Local Rule 9.1(d), submitted a statement of stipulated facts. Because that filing is part of the court's record (document no. 10), its contents need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  <u>Properly Supported Findings by the ALJ are
    Entitled to Deference</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

3

Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence.[1] See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the adverse position. See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."). See also Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222–23 (1st Cir. 1981).

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary

---

[1]    Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also See Social Security Ruling, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, SSR 96–2p, 1996 WL 374188 at *3 (July 2, 1996).

of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984)
(citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)).  It
is "the responsibility of the [Commissioner] to determine issues
of credibility and to draw inferences from the record evidence.
Indeed, the resolution of conflicts in the evidence is for the
[Commissioner], not the courts."  Irlanda Ortiz, 955 F.2d at 769
(citation omitted).  Accordingly, the court will give deference
to the ALJ's credibility determinations, particularly where those
determinations are supported by specific findings.  See
Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192,
195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health &
Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.  The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is
disabled under the Act if he or she is unable "to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or has lasted or can be expected to last for a
continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The Act places a heavy initial burden on the
claimant to establish the existence of a disabling impairment.
See Bowen v. Yuckert, 482 U.S. 137, 146–47 (1987); Santiago v.

Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to establish a doubt-free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

Provided the claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows the existence of other jobs that the claimant can perform, then the overall burden to demonstrate disability remains with the claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and

disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  When determining whether a claimant is disabled, the ALJ must also make the following five inquiries:

> (1)  whether the claimant is engaged in substantial gainful activity;
>
> (2)  whether the claimant has a severe impairment;
>
> (3)  whether the impairment meets or equals a listed impairment;
>
> (4)  whether the impairment prevents the claimant from performing past relevant work; and
>
> (5)  whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

## Discussion

I.    Background – The ALJ's Findings.

A.    ALJ Decision of June, 2003.

In an earlier decision (which was subsequently reversed in part and remanded in part by the Appeals Council), the same ALJ who rejected claimant's most recent application for disability benefits concluded that: (1) "claimant's subjective allegations are generally credible," Admin. Rec. at 82; (2) claimant suffers from coronary artery disease with angina, osteoarthritis of both shoulders, and depression, each of which is "severe," id.; and (3) "the claimant has been under a 'disability,' as defined in the Social Security Act since April 18, 1998," id,; see also Admin. Rec. at 81.  Some of those factual findings, as well as the ultimate conclusion that claimant was disabled as of April 18, 1998, are decidedly at odds with the ALJ's more recent findings and conclusions.

8

B.   ALJ Decision of June, 2005.

Following remand from the Appeals Council, the ALJ conducted another hearing at which Mr. Barriault appeared and testified. And, approximately two years after her original decision, the ALJ issued a second decision – this time concluding that claimant was <u>not</u> disabled at any time between April 18, 1998, and his date last insured (March 31, 1999).

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520.  Accordingly, she first determined that claimant had not been engaged in substantial gainful employment since April of 1998.  Admin. Rec. at 20.  Next, she concluded that claimant suffers from coronary artery disease with angina, osteoarthritis of both shoulders, and a history of both tobacco and alcohol abuse, all of which are "severe impairments."  Admin. Rec. at 20–21.  Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  Admin. Rec. at 21.

The ALJ then concluded that claimant retained the residual
functional capacity ("RFC") to perform the exertional demands of
sedentary work.[2]  She noted, however, that claimant's RFC was
limited by the following non-exertional factors: claimant could
not be exposed to temperature extreme, fumes, or dust, nor could
he work in areas with poor ventilation.  Admin. Rec. at 24.  In
light of those restrictions, the ALJ determined that claimant was
not capable of returning to his prior job as a auto mechanic.
Admin. Rec. at 25.

Finally, the ALJ considered whether, given claimant's
residual functional capacity to perform sedentary work, and in
light of his non-exertional limitations, there were any jobs in
the national economy that claimant might perform.  Relying on the
Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App.

---

[2]     "RFC is what an individual can still do despite his or her
functional limitations.  RFC is an administrative assessment of
the extent to which an individual's medically determinable
impairment(s), including any related symptoms, such as pain, may
cause physical or mental limitations or restrictions that may
affect his or her capacity to do work-related physical and mental
activities.  Ordinarily, RFC is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis, and the RFC
assessment must include a discussion of the individual's
abilities on that basis."  Social Security Ruling ("SSR"), 96-8p,
Policy Interpretation Ruling Titles II and XVI: Assessing
Residual Functional Capacity in Initial Claims, 1996 WL 374184 at
*2 (July 2, 1996) (citation omitted).

2, tables 1-3 (also known as the "Grid"), as a framework for her decision-making, the ALJ concluded that, during the narrow period of time in question, there were jobs in the national economy that claimant could perform, notwithstanding his exertional and non-exertional limitations.  Accordingly, she concluded that claimant was not "disabled," as that term is used in the Act, at any time between his alleged onset date (April 18, 1998) and his date last insured (March 31, 1999).

II.  <u>Inconsistent Findings</u>.

The issue addressed in the ALJ's original decision (dated June 24, 2003) is the same issue that was addressed in her most recent decision (dated June 22, 2005): whether claimant was disabled, within the meaning of the Act, at any time between April 18, 1998, and March 31, 1999.  Although in both cases the ALJ concluded that claimant was not entitled to disability benefits, the factual findings supporting those decisions are decidedly different.

For example, in her original decision the ALJ found that "claimant's subjective allegations [were] generally credible." Admin. Rec. at 82.  In her most recent decision, however, the ALJ concluded that "claimant's testimony regarding his subjective

complaints of pain was sincere, but not credible as to totally disabling pain because of the response to treatment that he had, the nature of his pain, the functional ability and his daily activities." Admin. Rec. at 26.

Additionally, in her most recent decision, the ALJ specifically concluded that claimant's depression was "not severe," noting that "prior to March 31, 1999, there were no limitations in his activities of daily living attributable to a mental impairment, no limitations in social functioning, no deficiencies of concentration, persistence or pace due to a mental impairment and no episodes of decompensation. Thus, the claimant's adjustment disorder was 'not severe' at any time through March 31, 1999." Admin. Rec. at 21. Those findings are, however in stark contrast to her earlier conclusions about claimant's depression:

> The claimant has been diagnosed with depression. The claimant's symptoms include an appetite disturbance, sleep disturbance and decreased energy. The claimant isolates [himself] and is withdrawn. The record establishes that the claimant's ability to perform his daily activities and to attend to and concentrate on tasks is mildly limited by his depressive symptoms. However, the claimant's ability to function in social settings is moderately limited by his depression. Accordingly, the claimant's depression is a "severe impairment."

Admin. Rec. at 78.  See also Admin. Rec. at 81 ("I find that
claimant retains the ability to perform work activity at the
sedentary level of exertion, but that he is unable to sustain the
psychological demands of work. . . . Accordingly, I find that the
combination of the claimant's physical and mental impairments
precludes the performance of work activity.").

Perhaps more importantly, in her original opinion, the ALJ
specifically concluded that, as of April 18, 1998, claimant was
disabled within the meaning of the Act (though she held that he
was not entitled to benefits because she believed his alcohol
addiction was "material to the determination of disability,"
Admin. Rec. at 81 – a factual finding that was, as noted above,
reversed on appeal by the Appeals Council.  Admin. Rec. at 144).
More recently, however, the ALJ concluded that claimant was not
disabled at any point in time between April 18, 1998, and March
31, 1999.

The ALJ did not explain the reasons for the markedly
different conclusions she reached in her second opinion, nor is a
basis readily apparent from the record.  It would appear that the
same evidence was before her when she rendered both decisions,
except, of course, when she authored her most recent opinion

claimant's medical record was more complete and included
treatments he had received after the ALJ's original opinion
(treatments which plainly indicate that claimant's condition
continued to deteriorate).  Given the ALJ's original opinion, and
the lack of an explanation for the very different conclusions
reached in her most recent opinion, the court cannot conclude
that her most recent opinion is supported by substantial
evidence.  There is, for example, no indication why the ALJ
recently concluded that claimant's depression was not severe,
when she had, only two years earlier, concluded that it was
severe (during the same time frame).  Nor is it apparent why the
ALJ once determined claimant was "disabled" as of April 18, 1998,
but, when the case was remanded to her (on a different issue),
she changed her view and determined that he was <u>not</u> disabled.

Given those inconsistencies (and the lack of an adequate
explanation for them), the court is constrained to conclude that
the ALJ's most recent determination that claimant is not disabled
is not supported by substantial evidence in the record.

III. <u>Weight Ascribed to Treating Physician's Opinion</u>.

Although the court has already resolved this matter in favor
of claimant, it is, perhaps, appropriate to discuss one of the

14

claims he raises in his memorandum, as it is likely to be an
issue on remand.  In support of his motion to reverse the ALJ's
adverse disability finding, claimant asserts that the ALJ failed
to afford proper weight to the opinions expressed by his treating
physician, Dr. Nethala.  There appears to be some confusion over
the proper interpretation that should be given to Dr. Nethala's
various reports concerning claimant's medical condition and its
effect on his ability to perform various work-related tasks.

During the relevant time period (i.e., between April 18,
1998, and March 31, 1999), Dr. Nethala's notes contain references
to his opinion that claimant was "unable to work, due to his
heart problems" and that claimant was "disabled, due to his
medical problems."  Admin. Rec. at 245.  Yet, at the same time,
Dr. Nethala opined that claimant was capable of lifting up to 20
pounds – an opinion that is, at least potentially, inconsistent
with a finding of disability.  See Admin. Rec. at 22 ("Although
Dr. Nethala opined in January 1998 that the claimant was
'disabled due to his medical problems,' specifically his chest
wall problems and arthritis of the shoulders, the only limitation
placed upon the claimant was to avoid lifting more than 20
pounds.").

15

In September of 1999 (i.e., after claimant's date last
insured), however, Dr. Nethala completed a "Cardiac Impairment
Questionnaire" in which he opined, among other things, that as of
at least June of 1995, claimant was incapable of lifting more
than five pounds, could carry no more than 10 pounds, would
occasionally suffer from lapses in attention and concentration,
could sit for no more than four hours during an eight-hour day,
could stand/walk for less than one hour during that period, and
would need to change his position every hour.  Admin. Rec. at
249-53.  In short, Dr. Nethala's responses on that questionnaire
suggest that claimant was, both currently and dating back as far
as 1995, disabled.

Plainly, there are some inconsistencies between Dr.
Nethala's office notes of January, 1998, and the subsequently-
prepared Cardiac Impairment Questionnaire.  And, the ALJ did, to
some degree, address those inconsistencies.  See Admin. Rec. at
25.  But, a lingering problem remains unresolved: Dr. Nethala's
opinion, rendered in 1998, that claimant could lift up to 20
pounds, even if fully credited over his more recent (and
comprehensive) retrospective diagnosis, does not compel the
conclusion that claimant was capable of substantial gainful
activity.  That is to say, simply because an individual has the

16

medical ability to lift 20 pounds does not mean that he or she is not disabled.  A more complete picture of the individual's functional capacity is obviously needed.  Unfortunately, Dr. Nethala's notes in 1998 do not provide that more complete picture and, therefore, the opinions expressed in those notes may (or may not) be inconsistent with his subsequent (and more thorough) opinions.

To resolve those apparent inconsistencies, the ALJ should consider communicating with Dr. Nethala.  <u>See</u> Social Security Ruling, <u>Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner</u>, SSR 96-5p, 1996 WL 374183 at *6 (July 2, 1996) ("Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion.").  <u>See also</u> 20 C.F.R. § 404.1512(e)(1) (explaining the Commissioner's obligation to recontact a treating physician for additional information when the record contains inadequate information to make a disability determination).  Alternatively, if Dr. Nethala

is unavailable, it is conceivable that another medical expert might be able to review those notes/reports and explain the apparent inconsistencies.[3]

Finally, the court agrees with claimant's assertion that the mere fact that his Dr. Nethala described his condition as "stable," does not compel the conclusion that claimant was capable of engaging in substantial gainful activity.  See generally Claimant's memorandum at 8-9.  See also Admin. Rec. at 22, 24, and 25 (where the ALJ suggests, at least implicitly, that because claimant's "cardiac status was stable," and because the only restriction Dr. Nethala expressly imposed on him was that he not lift more than 20 pounds, he was necessarily capable of substantial gainful activity).  The mere fact that his condition was "stable" does not shed any light on his residual functional capacity, nor does it provide any information as to whether he was or was not disabled at the time.  As claimant points out, it is entirely possible for a comatose patient to be "stable," yet plainly lack the ability to engage in substantial gainful activity.

---

[3]     To be sure, the ALJ had originally planned to have a medical expert present at the hearing on February, 15, 2005. But, for some reason, that medical expert was unable to attend and, although he then proposed to appear telephonically, he apparently cancelled at the last moment.  Admin. Rec. at 60.

**Conclusion**

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court concludes that, absent further explanation from the ALJ for the decidedly different factual and legal conclusions in her two decisions, it cannot conclude that substantial evidence in the record supports her determination that claimant was not disabled at any time prior to the expiration of his insured status on March 31, 1999.  The court is also persuaded that, absent elaboration from Dr. Nethala regarding his various assessments of claimant's condition and capacity to engage in substantial gainful activity, there is not substantial evidence in the record to support the ALJ's determination that "Dr. Nethala's current opinion conflicts with the record of his treatment of the claimant."  Admin. Rec. at 25.  Accordingly, claimant's motion to reverse the decision of the Commissioner (document no. 8) is granted to the extent he seeks a remand to the ALJ for further proceedings.  The Commissioner's motion to affirm his decision (document no. 9) is denied.

Pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is hereby remanded to the ALJ for further proceedings consistent with this order.  Among other things, the ALJ should consider

providing an explanation for the factual and legal findings in her most recent decision that differ from those in her original opinion.  She should also consider contacting Dr. Nethala so he might resolve any ambiguities associated with interpreting his various functional assessments of claimant.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

April 2, 2008

cc:  Raymond J. Kelly, Esq.
     T. David Plourde, Esq.